

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIEL T. MORRIS, Plaintiff | * | CIVIL ACTION NO. |
| | * | |
| versus | * | SECTION |
| | * | |
| MICHAEL P. ZERLIN, | * | MAGISTRATE " |
| CRAIG WEBRE, Defendants | * | |
| | * | JURY TRIAL REQUESTED |

* * * * * * * * * * * * * * * * * * * * * **

## PETITION FOR DAMAGES
## FOR BREACH OF CONTRACT;
## INTERFERENCE WITH CONSTITUTIONAL REDRESS OF GRIEVANCE;
## VIOLATION OF TITLE 42 § 1983

Louisiana Constitution Article 1 Section 22 <u>ACCESS TO COURTS</u>  " *All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered <u>without denial, partiality, or unreasonable delay</u>, for injury to him in his person, property, <u>reputation</u>, or other rights.* "

NOW COMES DANIEL T. MORRIS and respectfully submits that he has been harmed by the defendants to wit :

1. Plaintiff Daniel Morris resides in Lafourche Parish, Louisiana.

2. Michael Zerlin is a practicing attorney who works and resides within Lafourche Parish, Louisiana.

3. Craig Webre is the Sheriff of Lafourche Parish, Louisiana.

4. The Eastern District Court of Louisiana court maintains subject matter jurisdiction over this complaint pursuant to 28 U.S.C. § 1331.

In October, 2005 Michael Zerlin agreed to represent Daniel Morris in a Terrebonne Parish, Louisiana legal claim, CA No. 138826 against defendant Margaret A. Wren. Zerlin agreed to pursue the imposition of solidary liability upon Wren for an

existing December 2, 2003 judgment which had been issued in the case against a co-defendant. Zerlin agreed to depose Margaret Wren within a reasonable period of time. Zerlin agreed to depose the two witnesses who possessed testimony on the suit's key issue, Wren's and her co-defendant's defamation of the plaintiff.

7. Margaret Wren's deposition was never taken during the ensuing nineteen months.

8. Zerlin failed to make arrangements for a status conference on the case when such was offered by the presiding judge.

9. Zerlin simultaneously failed to preserve the testimony of the two key witnesses in the claim.

10. One of those witnesses, Edward Howard IV, has a prior criminal record; Howard was known by Zerlin to be a substantial flight risk.

11. Howard was incarcerated in the Terrebonne Parish Correctional Facility in Houma in mid August, 2006. Howard was incarcerated there for the next seven months. The Terrebonne correctional facility is approximately twenty miles from Zerlin's office in Thibodaux.

12. Across that seven months Zerlin failed to take witness Edward Howard's deposition.

13. In late March, 2007 Howard was transferred to the Detention Center in Thibodaux. Zerlin learned that he was to be transferred to Mississippi on a probation violation. Though advised by the plaintiff that Mississippi stated that it would cooperate in allowing Howard to remain in Thibodaux to be deposed, Zerlin again took no action. Howard was transferred to the Mississippi's Harrison County jail.

14. The second witness in the Morris case, Chad Bonvillian, had prior business connections with defendant Margaret Wren. He was an eye-witness to her alleged defamation of Morris and her solidary liability for the 2003 judgment. Bonvillian resided in Thibodaux, Louisiana.

15. Zerlin likewise failed to schedule Chad's Bonvillian's deposition during the entire nineteen month time in which he was the counsel for Morris's case.

16. In December, 2006 a business partner of Wren, Timothy Fanguy, began attempting to corruptly influence the outcome of the pending Morris case.

   a. The plaintiff was subjected to threats of physical harm if he sought evidence from Wren through the subpoena process.

   b. Key witness Chad Bonvillian and his family were subjected to extreme intimidation, bribe attempts and extortive demands in an attempt to get him to change his testimony in the case.

17. Zerlin was fully aware of the threats, witness intimidation, bribery attempts and extortionate demands. He took no steps to report it to the presiding Terrebonne Parish judge in the case.

18. Zerlin acted recklessly and unprofessionally in the handling of the Morris case.

   a. He failed to take the deposition testimony of Margaret Wren across 19 months in which he was enrolled as counsel of record;

   b. He failed to take the deposition testimony of key witnesses, Edward Howard IV, across these 19 months, allowing Howard to be transferred to another state's jurisdiction; he failed to take the deposition testimony of the other key witness, Chad

Bonvillian, across the 19 months that he was signed onto the case.

    c.    He allowed witness Bonvillian and his family to be attacked by Wren and her business colleague through cognizably criminal acts. He sought no protective measures from the Terrebonne Parish court or legal authorities.

19.    In February, 2007 Morris demanded that Zerlin take immediate action in pursuing the prosecution of the case.

20.    Under that pressure to act, Zerlin finally confessed to Morris that the case had become a " problem ".

    a.    He told Morris that the research into Wren's businesses had established her connection with convicted federal racketeer Louis Marcotte III;

    b.    He told Morris that the connection with Marcotte had could open a " can of worms " in Lafourche and Terrebonne Parishes relating to Marcotte's past and possibly still ongoing involvement in the bail bond operations of those parish's jails.

    c.    He stated that he had spoken with the Internal Affairs Chief at the Lafourche Parish Sheriff's Office, J. P. des Gravelles, and with LPSO investigator Toby Gamberella concerning the plaintiff's case and the witness tampering which was occurring.

    d.    He stated that the Sheriff's Office had made it clear that no real investigation of the threats and witness intimidation by Wren and Fanguy was going to be undertaken.

21.    Zerlin also confided that he had an ongoing personal and professional relationship with Lafourche Parish Sheriff Craig Webre, and had spoken directly with Webre about the Wren and Marcotte situation.

22. Zerlin stated that Webre was concerned that a public disclosure of Marcotte's past involvement in the Lafourche Parish jail's bail bonding operations could pose harm to his image and re-election campaign.

23. Zerlin indicated that it was this fear which had caused Webre's Chief Deputy to shelve the LPSO's investigation into the alleged threats, witness intimidation, bribery and extortion which had been transpiring with respect to the Morris case.

24. Zerlin indicated that a similar situation existed in Terrebonne Parish. He indicated that Sheriff Jerry Larpentier also had much to lose through a public disclosure of his jail's past connections with convicted bail bond racketeer Louis Marcotte, because he was running for Terrebonne Parish President.

25. On February 16, 2006 Zerlin then apprised Morris and two other individuals that even Judge John LeBlanc of the 17th JDC in Lafourche Parish had stated that he did not want evidence of Marcotte's involvement in the Lafourche Parish jail brought into the open in his court during a related proceeding against Wren and Fanguy.

26. Zerlin thereafter contacted Morris on three occasions via telephone and in person. He emphasized that Morris was not to speak to anyone, to any government agency or law enforcement official, or to anyone in the press, about the past involvement of Wren, Fanguy and Marcotte in the Lafourche and Terrebonne Parish jails. Nor was he to report to higher law enforcement officials the LPSO's sham investigation of Wren's and Fanguy's alleged criminal activities in Lafourche Parish relating to the suit.

27. Michael Zerlin acted grossly contrary to his professional services agreement with Daniel Morris.

28. Zerlin irreparably harmed the prosecution of the case against Margaret Wren. Michael Zerlin denied Morris his right to a remedy against Wren " *by due process of law and justice, administered <u>without</u> .... <u>unreasonable delay</u> ... for injury to him in his person, property, <u>reputation</u>* " and other rights.

29. Zerlin unethically and unlawfully allowed the political interests and re-election concerns of the Sheriff of Lafourche Parish to take precedence over his allegiance, duties, and legal obligations to his client Daniel Morris.

30. Zerlin's breach of his legal obligations to the plaintiff was motivated by and directly influenced by Sheriff Craig Webre.

31. Webre spoke with Zerlin and influenced him on the handling of the case for personal and financial reasons.

32. Webre realized that the defendants in the Morris case, bail bondsmen who were perpetrating the threats and witness intimidation in Lafourche Parish, were bondsmen with long-standing connections to Louis Marcotte; he realized that prior to the 2004 conviction for racketeering, Louis Marcotte had deep connections to the Lafourche Parish jail; Webre also realized that the private businesses which he ran on the side in Lafourche Parish had direct business dealings with bondsmen Fanguy and Wren.

33. Webre used his position as Sheriff to shelve the investigation of Wren's and Fanguy's alleged misconduct in his parish ; Webre allowed false information about the course of the nixed investigation to be conveyed to higher state authorities once the alleged malfeasance was reported; Webre used his personal and legal relationship with Zerlin to obtain Zerlin's cooperation in not reporting the Wren/Fanguy misconduct to the presiding Terrebonne Parish judge in the Morris case and to keep their misconduct from

being publicly disclosed. .

34. Webre refused to accord to Daniel Morris and to the witnesses in his case the protection to which they were entitled under the Louisiana criminal code, ie. protection from physical threats and acts of corrupt influence during the course of the litigation.

35. Webre acted unreasonably.

a. Webre had a duty to call in the Louisiana State Police or the Louisiana Attorney General's Office when he realized that an investigation of the alleged Wren/Fanguy threats, witness tampering and other criminal wrongdoing could expose information which was potentially adverse to his political political tenure.

b. Webre had a duty to recuse himself from any decision-making with respect to the investigation of the alleged threats and witness tampering because he had personal business dealings with the alleged perpetrators. Although he is Sheriff, Webre also privately owns and runs home incarceration and prisoner surveillance programs in Lafourche Parish and elsewhere; those private business interests are often run in conjunction with the bail bond business of the perpetrators of the alleged threats and witness intimidation which were occurring in Lafourche parish.

c. Webre had a duty under LSA R.S. 14: 134 (1)(2)(3) to enforce the criminal laws of the state of Louisiana concerning any corrupt influencing of witnesses and the physical intimidation and threatening of litigants whether or not it may opened a political " can of worms " for him, for his political ambitions or for his business interests.

d. Webre himself is a lawyer as well as Sheriff. He knew full well that he

7

had a duty to refrain from influencing Morris's attorney in any manner, directly or indirectly, on the course of the Wren litigation.

36. Webre violated his duty as Lafourche Parish Sheriff to enforce the Louisiana criminal code; he violated his duty to act affirmatively in protecting the plaintiff's right and his witnesses' right to be free from threats, intimidation, bribes, extortion, and other criminal activity whose purpose was to corruptly influence the judicial proceedings in which they were involved.

37. Webre's actions as referenced above constitute a " deliberate disregard " of the plaintiff's rights and of his witnesses' rights to full, unbiased protection under the law. Webre's actions thereby constitute his willful violation of the United States Code Title 42 § 1983.

Plaintiff prays that damages be imposed upon Michael Zerlin in the amount of the December 2, 2003 32nd JDC judgment for which his civil action sought to impose solidary liability upon Margaret Wren. The 2003 judgment was not appealed. It is final. With interest, it currently totals $85,000.00.

Plaintiff prays that just and equitable relief, and attorney's fees and costs of this proceeding, be imposed against Craig Webre as available under the United States civil rights laws.

Respectfully submitted,

*/s/ Daniel T. Morris*

DANIEL T. MORRIS
1714 Himalaya Avenue No. 7
Thibodaux, Louisiana 70301
(504) 273-0267
swampguylouisiana@yahoo.com

8